## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

       v.

John Joseph Waters, Jr.,

       Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal Case No. 13-203 ADM/JJG

---

William J. Otteson, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Reynaldo A. Aligada, Jr., Esq., Office of the Federal Defender, Minneapolis, MN, and Kirstin D. Kanski, Esq., Lindquist & Vennum PLLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On November 25, 2013, the undersigned United States District Judge heard oral argument on the United States of America's (the "Government") Motion in Limine to Admit Former Testimony of Unavailable Witness [Docket No. 35] ("Mot. in Limine"). Defendant John Joseph Waters opposes the motion. For the reasons stated herein, the Government's motion in limine is denied.

## II. BACKGROUND

Gerard Leon Cafesjian was a retired executive of West Publishing. From 1996 to 2009, Cafesjian employed Defendant Waters as the manager for his personal, business, and philanthropic pursuits. Indictment [Docket No. 1] ¶¶ 4-6. The Government alleges Waters cultivated Cafesjian's trust, and in turn received significant control over Cafesjian's interests, including signing authority over numerous bank, trust, and investment accounts. Through this

authority, Waters allegedly embezzled "millions of dollars" from Cafesjian.  Id. ¶¶ 6-11.

According to the Government, Cafesjian did not learn about Waters' fraudulent scheme until

after Waters left Cafesjian's employment in March 2009.  When confronted with the fraud,

Waters allegedly threatened to reveal personal information about Cafesjian in an effort to

dissuade Cafesjian from further investigating or reporting the scheme.  Id. ¶ 16.

On March 13, 2012, Waters filed a pro se civil action against Cafesjian.  In the civil suit,

Waters claimed to have an employment agreement with Cafesjian that in part compensated

Waters based on the total value of Cafesjian's assets.  See generally Compl., Waters v. Cafesjian,

No. 12-648 RHK/LIB (D. Minn. Mar. 13, 2012).  Waters alleged Cafesjian failed to compensate

him per their agreement, and Waters sought several million dollars in damages.[1]

To preserve testimony in the civil action, Cafesjian's then-counsel, Andrew Lugar of

Greene Espel PLLP, scheduled Cafesjian's deposition.  The approximately four-hour deposition

took place over three days in August 2012.  Lugar questioned Cafesjian for about one hour on

the first day of the deposition, and Waters personally questioned Cafesjian for the remaining

three hours of the video-taped deposition.

One year later, on August 5, 2013, the Government indicted Waters with 20 counts of

mail and wire fraud, three counts of tax evasion, and thee counts of filing false tax returns.

Cafesjian died the following month, on September 15, 2013.  The Government now seeks a

ruling to allow Cafesjian's civil deposition testimony to be admitted as evidence in Waters'

criminal trial.

---

[1] On May 9, 2013, Judge Richard H. Kyle granted summary judgment against Waters on all of his claims.  Cafesjian's and the related defendants' counterclaims and third-party claims remain in the action.  See Order, Waters, No. 12-648 RHK/LIB (D. Minn. May 9, 2013).

## III. DISCUSSION

Rule 802 of the Federal Rules of Evidence bars the admission of hearsay evidence offered at trial.  See also Fed. R. Evid. 801 (defining "hearsay" as a statement made by a declarant outside of the current trial or hearing, which a party offers in evidence to "prove the truth of the matter asserted in the statement").  Among the exceptions to the rule against hearsay is prior testimony of an unavailable witness.  See Fed. R. Evid. 804.  "Former testimony" is defined under Rule 804(b)(1) as testimony that:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

The Government argues Cafesjian's civil deposition qualifies under this "former testimony" exception, and thus should be admitted at trial.  Addressing subsection (B),[2] the Government argues Waters had ample opportunity to cross-examine Cafesjian, and did in fact do so for about three hours.  The Government also argues Waters had a "similar motive" to develop Cafesjian's testimony in the civil case as he does in this criminal case because both actions relate to the same underlying facts and interests.  In addition, Waters had already come under federal investigation by the time of the Cafesjian deposition.  This, the Government argues, means Waters knew or should have known that he was facing criminal prosecution, and developed Cafesjian's deposition testimony accordingly.  Finally, the Government argues Rule 804's hearsay exception provides the same safeguards as the Sixth Amendment.  As a result, it argues

---

[2] There is no dispute that Cafesjian's civil deposition testimony was given during a "lawful deposition," thus satisfying subsection (A).

3

that admitting Cafesjian's deposition will satisfy Rule 804 and will not offend Waters' Sixth Amendment Confrontation Clause rights.

Waters argues the Confrontation Clause precludes admission of Cafesjian's testimony. The Sixth Amendment affords any person accused of a crime the right to confront the witnesses against him.  Waters argues this constitutional analysis is separate from and would trump any Rule 804 evidentiary argument.  When a court admits prior testimony against a criminal defendant because a witness is unavailable, it must ensure the defendant had the requisite constitutional safeguards at the time the prior testimony was given.  See Phillips v. Wyrick, 558 F.2d 489, 494-95 (8th Cir. 1977).  Because Waters did not have legal counsel at Cafesjian's civil deposition, Waters argues he lacked an adequate opportunity to cross-examine Cafesjian. Waters also argues that at the time of the deposition, he had not been indicted and thus had no knowledge of the specific charges against him, meaning he lacked the factual predicate to effectively confront Cafesjian regarding the criminal allegations.  Similarly, Waters argues that even if the Cafesjian deposition satisfies the Confrontation Clause, it would not satisfy Rule 804 because Waters' motive in the civil case differs from his motive in this criminal case.

The Confrontation Clause and the rules of evidence should not be intermingled in analyzing the admissibility of testimonial evidence.  For many years, federal courts evaluated the reliability of prior testimony when determining whether to admit the testimony as evidence in a criminal trial.  See, e.g., Holt v. Wyrick, 649 F.2d 543, 548 (8th Cir. 1981).  This logically led courts to view the rule against hearsay and the Confrontation Clause as contiguous with regard to the admission of prior testimony, because the rules of evidence are primarily concerned with the practical aspects of evidentiary relevance and trustworthiness.  See, e.g., Bear Stops v. United

4

States, 339 F.3d 777, 781 (8th Cir. 2003) ("The Confrontation Clause is satisfied when the hearsay evidence falls within a firmly rooted exception to the hearsay rule or is supported by facts that otherwise demonstrate the statement's reliability. . . .").

Ten years ago, however, the United States Supreme Court clarified the distinction between the Confrontation Clause and the rule against hearsay.  In Crawford v. Washington, 541 U.S. 36 (2004), the Court reversed the Washington Supreme Court in holding that regardless of its reliability, prior testimonial evidence may not be admitted at trial unless the defendant had the opportunity to cross-examine the witness.  The Court specifically distinguished the Confrontation Clause from the rule against hearsay, holding, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'"  Id. at 61. Reviewing the historical context of the Sixth Amendment, the Court also observed that while hearsay exceptions existed at the time of the country's founding, these exceptions were not intended to apply to testimonial statements offered in a criminal case.  Id. at 55-56.

As a result, Cafesjian's civil deposition testimony must first and foremost be evaluated under the Confrontation Clause's requirements, and not the rule against hearsay.  See Davis v. Washington, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."); Bobadilla v. Carlson, 575 F.3d 785, 788-89 (8th Cir. 2009) (discussing Crawford as "concluding the Confrontation Clause had nothing to do with the reliability of the statement at issue").  The parties do not dispute that Cafesjian's deposition is testimonial in nature.  Thus, the pivotal question is whether Waters had a sufficient

opportunity to cross-examine Cafesjian during the civil deposition.

In short, he did not.  As discussed, the right to confront witnesses requires the defendant have "an opportunity for <u>effective</u> cross-examination," because cross-examination is one of the surest ways to test the validity of evidence.  <u>Delaware v. Fensterer</u>, 474 U.S. 15, 19-20 (1985) (emphasis added).  A second constitutional right has long supported the criminal defendant's right to confront the witnesses against him.  In addition to the Confrontation Clause, the Sixth Amendment provides criminal defendants the right to counsel "at every critical stage of the prosecution."  <u>Hanson v. Passer</u>, 13 F.3d 275, 278 (8th Cir. 1994).  Like the right to confront witnesses, the right to counsel is critical to the truth-seeking component of the criminal justice system: "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."  <u>United States v. Cronic</u>, 466 U.S. 648, 655 (1984) (citation omitted).  And "unless the accused receives the effective assistance of counsel, a serious risk of injustice infects the trial itself."  <u>Id.</u> at 656 (internal quotation omitted).  The right to confront witnesses and the right to counsel operate in harmony; both exist to ensure the defendant has a full and fair opportunity to challenge the case against him.  <u>See</u> <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963) (holding that without counsel, even an innocent defendant "faces the danger of conviction because he does not know how to establish his innocence") (quoting <u>Powell v. Alabama</u>, 287 U.S. 45, 64 (1932)).  Denying either right would gravely threaten a trial's ability to accomplish justice.

Although the issue has not often been addressed, there is precedent that for prior testimony to be admitted at trial, the defendant must have had the assistance of counsel during

the prior examination.  In <u>Pointer v. Texas</u>, 380 U.S. 400, 401-02 (1965), criminal defendant

Pointer and a co-defendant did not have counsel during a preliminary hearing in their case.  The

prosecution examined witnesses at the hearing, including eliciting the testimony of a key witness

named Phillips.  Pointer's co-defendant attempted to cross-examine Phillips, while Pointer

attempted to cross-examine other witnesses.  Phillips later became unavailable for trial, and the

prosecution sought to introduce Phillips' testimony transcript as evidence.  <u>Id.</u>  Despite Pointer's

objections—made by trial counsel—the state trial court admitted the transcript.  The state court

found that because Pointer had been present at the hearing, he had been "accorded the

opportunity of cross examining the witnesses there against him."  <u>Id.</u>  The Texas Court of

Criminal Appeals affirmed.  <u>Id.</u>

 The United States Supreme Court reversed.  The Court framed the question before it as

not whether Pointer had the right to counsel at the preliminary hearing, but whether the

admission of the transcript at trial denied Pointer the right to have his counsel cross-examine the

principal witness against him.  <u>Id.</u> at 403.  The Supreme Court held the trial court had denied

Pointer's Sixth Amendment rights.  The right to confront witnesses necessarily encompasses the

right to cross-examination, the Court held, and the opportunity for an effective cross-

examination cannot exist without the right to counsel.  The Court observed that Pointer's case

"would be quite a different one had Phillips' statement been taken at a full-fledged hearing at

which petitioner had been represented by counsel who had been given a complete and adequate

opportunity to cross-examine."  <u>Id.</u> at 407.  But because Pointer did not have counsel at the

hearing, introducing Phillips' transcript "would have amounted to denial of the privilege of

confrontation guaranteed by the Sixth Amendment."  <u>Id.</u>

The Court's holding in Pointer remains good law.  Though Confrontation Clause jurisprudence has evolved, the Supreme Court and the Eighth Circuit have consistently evaluated a defendant's access to counsel when determining the admissibility of prior testimony.  See, e.g., Phillips, 558 F.2d at 493 (holding the hearing in Pointer violated defendant's "right of confrontation because the defendant, for lack of counsel at the preliminary hearing, had been denied an adequate opportunity to cross-examine the witness"); California v. Green, 399 U.S. 149, 165 (1970) (finding preliminary hearing testimony admissible at trial in part because "respondent was represented by counsel"); Mancusi v. Stubbs, 408 U.S. 204, 213-24 (1972) (finding testimony from first trial admissible at second trial due to its reliability, in part because defendant "was represented by counsel who could and did effectively cross-examine prosecution witnesses" at first trial); Howard v. Sigler, 454 F.2d 115, 117 (8th Cir. 1972) (finding testimony from first trial could be admitted at second trial in part because "petitioner was represented by counsel and had the opportunity to cross-examine the witness"); United States v. Terrazas-Montano, 747 F.2d 467, 469 (8th Cir. 1984) (affirming admission of criminal deposition testimony because deposition "approximated traditional courtroom setting," including defendant's counsel receiving "full opportunity to cross-examine"); United States v. Causevic, 636 F.3d 998, 1004 (8th Cir. 2011) (finding record from prior Bosnian trial conducted in absentia to be inadmissible, observing, "[a]lthough the record reflects that Mr. Causevic had an attorney in the [Bosnian] murder case, we cannot tell from the record if the lawyer cross-examined witnesses, or even had the right to do so").

Although it appears few published decisions have addressed the somewhat unusual fact-pattern in Waters' case, there is no reason to depart from the principles enunciated in Pointer and

Crawford simply because the prior testimony at issue arose in a civil deposition.  As in Pointer, it

is important to carefully identify the constitutional question.  The question is not whether Waters

had the right to counsel during Cafesjian's civil deposition; he did not.  Rather, the question is

whether admitting Cafesjian's deposition testimony at Waters' criminal trial would deny him the

"opportunity to have the benefit of counsel's cross-examination of the principal witness against

him." Pointer, 380 U.S. at 403.  In other words, has the offered testimony been adequately

tested, such that Waters' right to meaningfully confront Cafesjian has been satisfied?  Put this

way, the conclusion is clear: Cafesjian's testimonial statements may not be admitted to prove the

truth of the matter asserted.[3]  As a non-lawyer, Waters almost certainly lacked the knowledge

and experience necessary to develop Cafesjian's testimony for a criminal defense.  See Powell,

287 U.S. at 64 ("Even the intelligent and educated layman has small and sometimes no skill in

the science of law.").  Admitting the video-recorded deposition against Waters in the criminal

case would effectively deprive Waters of his right to counsel during the cross-examination of a

key witness.

　　　　Admitting Cafesjian's testimony would create an unprecedented exception to the

Confrontation Clause.  The Government argues Cafesjian's testimony should be admitted largely

because Waters had both the opportunity and motive to challenge Cafesjian's testimony.  The

Government also argues there is no requirement that a defendant actually exercise his

---

[3]  The bar against testimonial evidence only applies to hearsay, or statements offered to prove the truth of the matter asserted.  To the extent the Government seeks to admit portions of Cafesjian's testimony for other purposes, such as impeachment, these offers of admission will be considered individually at trial.  See United States v. Holmes, 620 F.3d 836, 841 (8th Cir. 2010) ("Crawford is also limited to hearsay evidence—that is, evidence offered to prove the truth of the matter asserted.").

opportunity to cross-examine, so long as he is afforded one.  Gov't's Mot. in Limine at 6-8.  But there is no articulable principle that separates Waters' case from Pointer.  In both cases, the defendant had the opportunity to personally question a key witness; in both cases, the defendant had an arguably similar motive to challenge the witness.[4]  Yet in Pointer, the Supreme Court still reversed the admission of the prior testimony because the actual lack of counsel—regardless of whether Pointer had a right to counsel—prevented a meaningful confrontation.  Nothing separates this reasoning from the case at hand.  Waters' actual lack of counsel—even though he had no right to counsel—prevented a meaningful confrontation.  The manner of a prior examination may be entirely appropriate in its original legal context.  That does not mean the resulting testimony will satisfy the Confrontation Clause when later offered in a criminal trial.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Government's Motion in Limine [Docket No. 35] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 8, 2014.

---

[4]  The Court is skeptical as to whether Waters had a sufficiently similar motive during the civil deposition as does now in his criminal case, and thus whether he could have truly confronted Cafesjian even if he had counsel.  At the time of the Cafesjian deposition, one year before being indicted, Waters had no specific knowledge of the 26 counts now against him.  Nevertheless, the holding issued today precludes the need to resolve the issue of motive.